HERNÁNDEZ, PLAINTIFF AND APPELLEE, *v.* ALGARÍN ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Humacao in an Action of Unlawful Detainer.

No. 2686.—Decided June 23, 1922.

UNLAWFUL DETAINER—CONFLICT OF TITLES.—When the title asserted in opposition to an action of unlawful detainer is that of gift and the evidence shows

that the contract was not perfected as required by section 641 of the Civil Code, it is necessary to conclude that there has not been established a conflict of titles that would defeat the action.

The facts are stated in the opinion.

Mr. A. Aponte, Jr., for the appellants.

Mr. C. Travecier for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

This was an action of unlawful detainer. It was originally brought against José Algarín, but thereafter Justa González, the wife of the defendant, became a party defendant to the action without objection on the part of the plaintiff and with the permission of the lower court.

The plaintiff alleged that he was the owner of a certain urban property situated in the town of Las Piedras; that the defendants were occupying the house without paying any rent, with the consent of the owner, of whom José Algarín was an employee, and that demand had been made upon them to vacate it which they refused to do. The defendants specifically denied the allegations of the complaint and as new matter in opposition alleged that Justa González was the sole owner of the urban property involved in the action; that she acquired it from Julio Camacho with the intervention of Manuel Márquez in whose name the deed was drawn because Justa González was not present when the deed was executed.

After a trial of the case the court rendered judgment sustaining the complaint and from that judgment the present appeal was taken.

The only assignment by the appellant is that the trial court erred in weighing the evidence and sustaining the complaint.

The appellant maintains that Justa González is the owner of the property and attempts to show that there is a conflict of titles which could not be adjusted in a special and summary proceeding like an action of unlawful detainer. In

order to be able to consider the question as it was raised, it is necessary to analyze the evidence examined by the parties.

The plaintiff acquired the urban property described in his complaint by purchase from Avelino Márquez Díaz by a deed executed before notary Carlos Travecier on August 2, 1921. Avelino Márquez Díaz and Emilia Roig Hernández were adjudged to be the sole and universal heirs of their son, Manuel Márquez Roig, who died on January 15, 1919, after having acquired the said property by purchase from Julio Camacho Ramírez by a deed executed before the same notary on March 21, 1918. This is the documentary evidence as it appears in the record, and now we shall transcribe the testimony, which seems to be more favorable to the cause of the defendant. In the first place, her own testimony is that she sustained amorous relations with Manuel Márquez as a result of which he seduced her and they went to live in a house that belonged to him; that he told her that he was going to buy a house for her and spoke to Julio Camacho, the vendor of the house; that he bought the house and they lived together in it for three months and then Manuel Márquez died; that about nine months after his death she married José Algarín and then went to Caguas where she stayed about six months, leaving the house rented; that she rented it and collected the rent; that Enrique Martínez lived in the house and paid the rent to her personally; that while she was in Caguas Avelino Márquez collected the rent and took it to Caguas to her when she did not go to Las Piedras; that Avelino Márquez was the father of Manuel Márquez and knew that she lived with his son and everything about it; that immediately after the death of Manuel Márquez she went to live at Avelino's house, because they did not want her to live alone, and it was then that she rented the house to Enrique Martínez.

The testimony of the vendor of the property, Julio Camacho, and that of one of the lessees of the house, Enrique

Martínez, in so far as pertinent, relate to the defense set up by the defendant. Camacho testified that he was the owner of a house in New Street, Las Piedras; that once Manuel Márquez asked him to sell the house to him because he wanted to make a present of it to Justa González; that they agreed on a price and he told the witness to go to the house of Travecier to sign the deed and the witness went there some three days later; that the witness met Manuel Márquez in Las Piedras and Márquez paid him for the house; that he asked that the deed be made out in the name of the girl and purchased the house with the intention of making a present of it to that girl. Martínez testified that he knew the defendant; that she lived in a house in New Street, Las Piedras; that the witness needed a house for his family and having heard that this house was unoccupied, he tried to rent it; that he first spoke to Avelino Márquez who told him that if he wanted to rent the house he should go to his home; that there the wife of Márquez told the witness in the name of the defendant what rent she asked for the house; that he sent the first instalment of rent to the wife of Márquez in a letter and afterwards received instructions from Avelino Márquez to pay the rent to the defendant, saying that he intended to help her, and she received the rent for three or four months.

It can not be denied that the property was purchased by Manuel Márquez Roig while he was sustaining amorous relations with defendant Justa González and they were living together as husband and wife. This relationship between them of living under the same roof is the basis of the allegation of Justa González that Manuel Márquez Roig purchased the house for her as a gift to his mistress as a token of his affection for her. Manuel Márquez Roig seems to have seduced her and then conceived the idea of making her a present of the house in which they sustained amorous relations as a recompense for her love for him as well as

for her care of him as a result of such relations. These incidents which commonly occur in real life are always interesting from a sentimental point of view, but whatever may be their impression upon our minds, such a situation would have to be defined by law; but not being so defined, the law which governs the present case must be applied strictly and coldly in furtherance of the guarantees and solemnities therein established. Manuel Márquez Roig did not display the necessary diligence to convert his intention into a practical and legal result. If his purpose was to make a donation, he did not take care to comply with the indispensable requirements which are mandatory under the law in case of a donation of real property in which the formality of a public deed is an essential requisite for its complete validity. Section 641 of the Civil Code reads as follows:

"Sec. 641.—In order that a gift of real property may be valid it shall be made in a public instrument, stating therein in detail the property bestowed as a gift and the amount of the charges, which the donee must satisfy.

"The acceptance may be made in the same instrument bestowing the gift or in a different one; but it shall produce no effect if not made during the life of the donor."

Scaevola, Civil Code, vol. 11, 565, says:

"If the Code orders that gifts of real property shall be made and accepted in a public deed and that otherwise they shall be void, the deed to set out in detail the properties donated and the amount of the encumbrances which the donee must satisfy, it should be seen without the least effort that its purpose is not only to authenticate and act of such importance as the gift of real property by attaching to it the permanence, solemnity and effects of a public deed, but also to place it, by express mandate of the law, in the position required by the Mortgage Law for its record in the public registry, thus avoiding its legal invalidity as to third persons."

In the face of the statute cited and the comment on the same, the testimony of the original vendor of the property,

Julio Camacho Ramírez, who mentioned the statements of the purchaser, Márquez Roig, regarding his intention to donate the house, and also the act of Justa González of collecting the rent of the house after the death of Márquez Roig, are absolutely valueless in law and do not import even circumstantial evidence which could originate a conflict of titles and maintain the defendant in the physical possession of the property pending the adjustment of that conflict within the ample opportunities of an ordinary action. And it can not be asserted that in considering this case and examining the evidence we are deciding the property rights of the parties. Such is not the case. What it has been necessary to establish is that the allegation of defendant Justa González is unsupported by any evidence because she has no title whatever, inasmuch as a gift of real property, for which a public deed is absolutely necessary to convey a title, can not be compared with any other mode of acquisition by contract, as in this case.

For the foregoing reasons the judgment must be

*Affirmed.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Hutchison concurred.